## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LIFEVOXEL.AI INC., | : | |
| AI VISUALIZE INC., | : | |
| KOVEY KOVALAN, AND | : | |
| LINH LE | : | |
| | : | |
|    PLAINTIFFS | : | |
| | : | CASE NO. |
|  V. | : | |
| | : | |
| AMJAD M. KHAN, ETHAN J. BROWN, | : | |
| BROWN NERI SMITH & KHAN LLP, | : | |
| ADNAD SHAMS, JENNIFER GORDON, | : | |
| LORIUM PC ,LIFEVOXEL VIRGINIA | : | |
| SPV, LLC, SCOTT MARSCHALL, | : | |
| DEBBIE GALLO, KEVIN SINAGRA, AND | : | |
| SCOTT POOLE | : | |
| | : | OCTOBER 9, 2023 |
|    DEFENDANTS | : | |

## COMPLAINT

### Nature of the Action

The Plaintiffs, LifeVoxel.AI, Inc., AI Visualize, Inc., Kovey Kovalan, and Linh Li, file this complaint against the Defendants, Amjad M. Khan, , Ethan J. Brown, Brown Neri  Smith & Khan, Jennifer Gordon, Lorium PC, LifeVoxel SPV LLC, Scott Marschall, Debbie Gallo, Kevin Sinagra, and Scott Poole, asserting: (1) claims for vexatious litigation/malicious prosecution; (2) claims for abuse of process;  (3)  claims for tortious interference with business expectancies; and (4) federal and state claims for the misappropriation of confidential, privileged, proprietary and trade secret information, seeking both temporary and permanent injunctive relief.

**Parties**

1)   Plaintiff LifeVoxel.AI Inc. ("LVAI") is a Delaware corporation with an office at 263 Tresser Boulevard, 9th Floor, Stamford, Connecticut.

2)   Plaintiff, AI Visualize Inc.("AIV") is a Texas corporation.

3)   AIV is the parent company of LVAI (collectively LVAI and AVI are referred to as the "Companies").

4)   Plaintiff, Kovey Kovalan ("Kovalan"), is an individual and the founder and an employee of the Companies.

5)   Plaintiff Linh Le is an individual, Kovalan's wife, and at all times was an employee and officer of the Companies.

6)   Defendant Amjad M. Khan ("Khan") is an individual, and upon information and belief, resides in California.

7)   Defendant Ethan J. Brown ("Brown") is an induvial, and upon information and belief, resides in California.

8)   Defendant Brown, Neri, Smith & Khan LLP ("BNSK"), is a foreign LLP which lists its principal office as 11601 Wilshire Blvd #2080, Los Angeles, CA 90025

9)   At all relevant times Brown and Khan were partners, employees, agents, and/or servants of BNSK (collectively the "BNSK Defendants") and were acting in their capacity as such.

10)  Defendant Adnan Shams ("Shams") is an individual, and upon information and belief, resides in Illinois.

11)  Defendant Jennifer Gordon ("Gordon") is an individual, and upon information and belief, resides in Illinois.

12)  Defendant Lorium PC ("Lorium") is a professional corporation, listing its registered office as 150 Michigan Avenue, 8th Avenue, IL 60601, and a registered agent for service as Jennifer Gordon, 180 N. LaSalle Street, Suite 370, Chicago, Illinois 60601.

13)  At all relevant times, Shams and Gordon were partners, employees, agents, and/or servants of Lorium, and were acting in their capacity as such.

14)  Shams, Gordon and Lorium are collectively referred to as the "Lorium Defendants."

15)  Defendant, LifeVoxel Virginia SPV, LLC ("LVSPV"), is a Wyoming LLC with an office address of 4801 Jennell Drive, Chantilly, VA, 20151.

16)  Defendant, Scott Marschall ("Marschall"), is an individual with a last known address of 23108 Backcountry Ct., Ashburn, VA 20148.

17)  Defendant, Debbie Gallo ("Gallo"), is an individual with a last known address of 13897 Lawrence Park Court, Chantilly, VA 20151.

18)  Defendant, Kevin Sinagra ("Sinagra"), is an individual with a last known address of 3620 Fisher's Hill Court, Fairfax, VA 22033.

19)  Defendant, Scott Poole ("Poole"), is an individual with a last known address of 3413 Hidden Meadow Drive, Fairfax, VA 22033.

20)  Collectively, LVSPV, Marschall, Gallo, and Singara, are referred to as the "Investor Defendants."

21)     Sekhar Puli ("Puli") is a non-party individual who, upon information and belief, resides in Virginia.

22)     Kishore Mamillapalli ("Kishore") is a non-party who. upon information and belief, resides in Los Angeles, California.

**Venue and Jurisdiction**

23)     Venue is proper pursuant to 42 U.S.C. § 1391(b)(3) as a district with jurisdiction over one or more of the defendants.

24)     Jurisdiction is proper pursuant to federal question jurisdiction 28 U.S.C. § 1331 and 18 U.S.C. §1836(c), and supplemental jurisdiction over the state statutory and common-law claims under 28 U.S.C § 1367.

**General Allegations**

**Puli's Employment**

25)     On September 1, 2021, the Companies entered into an employment agreement with Puli whereby Puli agree to act as the Chief Executive Officer and the President of both Companies.

26)     Puli's employment agreement contained a "Nondisclosure of Confidential Information provision," which required Puli to keep all ideas, information and materials, tangible or intangible, not generally known to the public he acquired during his employment with the Companies be held "in trust and confidence" during and after his employment.

27)     Puli also agreed upon termination of his employment to return the Companies confidential and proprietary information.

28)     While acting as the Companies' CEO and President, Puli was provided access to all of the Companies' nonpublic, confidential and proprietary information as well as privileged communications.

29)     Puli stored the Companies' nonpublic, confidential and proprietary information, including emails, on his personal computers and devices.

4

30)     As part of his employment duties, Puli oversaw a capital raise for LVAI through the use

of SAFE Notes that, generally speaking, he sold to his family and friends, including each of the

Investor Defendants.

31)     The SAFE Notes that Puli and each of the Investor Defendant signed listed LVIA's

address as being 263 Tresser Boulevard, 9th Floor, Stamford, Connecticut.

32)     After several months of being employed, Puli demanded that he be given additional

compensation in the form of shares in the Companies, above and beyond the compensation he

agreed to in his employment agreement.

33)     Puli also demanded that his equity ownership vest immediately, as opposed to over 5

years as he agreed to in his employment agreement.

34)     Puli offered no consideration or justification for his demand to immediately own 40% of

the Companies.

35)     The Companies rejected Puli's demand because it was not in the best interest of the

Companies and the investors, including the Investor Defendants.

36)     This caused Puli to become very angry.

37)     As a result of the Companies rejecting his demands, without warning Puli resigned his

positions on or about November 27, 2021.

38)     Shortly after his resignation, the Companies provided written notice that they accepted

Puli's resignation.

39)     After Puli resigned, the Companies made multiple demands for him to return the

Companies' confidential and proprietary information, including, but not limited to,

correspondence, and communication with the SAFE Note Investors.

40)     Shortly after Puli's resignation, the Companies sent him a written notice reminding him of his confidentiality obligations, and duties to return the Companies' nonpublic, confidential, and proprietary information.

41)     Puli refused to produce and return the information, or otherwise cooperate with the Companies efforts to secure its confidential and proprietary information.

42)     Upon information and belief, at some time after he resigned Puli destroyed a large amount of the confidential and proprietary information he stored on his computer and personal devices, including, but not limited to, emails.

**Puli's Threats**

43)     More than a month after he resigned, Puli, through his personal attorneys, the Lorium Defendants, demanded to be reinstated to his former positions with the Companies within one (1) business day, and threatened that if he was not he would join with his friends and family to sue the Companies making specious claims of the Companies' wrongdoing.

44)     The Companies ignored Puli's threats because there was no wrongdoing on their part.

45)     Upon information and belief, after the Companies refused to reinstate him, Puli began contacting third-parties, including the Investor Defendants, disclosing the Companies' confidential and proprietary information, as well as privileged and attorney-client communications, in an attempt to solicit the third-parties to bring lawsuits against the Companies with Puli paying the legal fees and costs.

46)     On or about March 17, 2021, Kishore Mamillapalli (a nonparty) ("Kishore"), a friend of Mr. Puli's from their youth, threatened to stab Kovalan.

47)     Shortly thereafter Kishore told a business associate of Kovalan in India that he was joining forces with Puli and his attorneys so that Puli could take control of the Companies and ruin Kovalan's reputation.

**The Agreement Between Puli. Kishore and the Investment Defendants**

48)     Upon information and belief, Puli, Kishore, and the Investment Defendants entered into a agreement whereby Puli and/or Kishore would provide the Investment Defendants, the BNSK Defendants, and the Lorium Defendants, with the Companies' confidential and proprietary information, and provide false claims to support a lawsuit against the Companies.

49)     The agreement between Puli, Kishore, and the Investment Defendants constitutes a civil conspiracy to deprive the Companies of their legal rights and to achieve an illegal objective.

50)     As part of the conspiracy, Puli also provided the Investment Defendants, the BNSK Defendants and the Lorium Defendants with documents protected by the attorney-client privilege.

51)     The attorneys with BNSK Defendants and the Lorium Defendants, despite knowing of Puli's contractual and fiduciary duty to keep the Companies' confidential and proprietary information in confidence, received the purloined files containing the trade secrets, as well as the communications that were protected by the attorney-client privilege belonging to the Companies, and made no effort to notify the Companies and their attorneys.

52)     The Defendants agreed to join Puli and Kishore's efforts to use the Companies' confidential and proprietary trade secrets to take control of the Companies by, among other things, the use of threats, defamatory statements, and vexatious litigation that they knew would deter any other investors in the Companies which would facilitate their takeover of the Companies.

53)     As part of the agreement between Puli, Kishore, and the Investment Defendants, the

parties agreed that the Investment Defendants would be represented by Puli's personal attorneys,

Shams, Gordon, Lorium, and the BSKH Defendants while they were concurrently representing

Puli, and that Puli would pay all the legal fees and costs to use the Investment Defendants as

Puli's proxy-plaintiff's file a meritless lawsuit against the Companies.

54)     On or about April 26, 2022, the BNSK Defendants and the Lorium Defendants filed a

lawsuit in the Southern District of California, captioned LifeVoxel.AI *Virginia SPV LLC et al. v*

*LifeVoxel.AI Inc*., Docket #  22-CV-0566 BEN JLB  (the "Lawsuit") on behalf of the Investor

Defendant as plaintiffs.

55)     At approximately the same time, Shams, Gordon and Lorium filed an arbitration demand

on behalf of Puli. Puli is not a party to this case due to the arbitration provisions in his

employment agreement.

56)     The Lawsuit was commenced at the direction of Puli and the Investment Defendants.

57)     Puli is paid all legal fees and cost associated with the following in pursuit of the Lawsuit.

58)     The Lawsuit was filed to deter future investments so that Puli and the Investor

Defendants to take over the Companies.

59)     The Lawsuit contained material misrepresentations of fact, including but not limited to,

    a) the existence and contents of emails allegedly exchanged by Puli and each of the
        Investor Defendants, which allegedly included attachments containing
        misrepresentations.

    b) claims that the Investment Defendants received a fraudulent capitalization table.

    c) Claims that Kovalan embezzled the Investor Defendant's funds.

    d) Claims that Kovalan was engaged in a Ponzi scheme.

e)   Claims that Kovalan failed to secure the Companies intellectual properties.

60)   The Lawsuit included allegations of misrepresentations and fraud, without the Defendants being able to identify the speaker, the content of the misrepresentation, or the method of communication (oral or written), and therefore without satisfying the pleading requirements of Federal Rule 9(b) of the Federal Rules of Civil Procedure.

61)   The reason the Defendants could not identify the alleged speakers, content of the misrepresentations, or the method of communications was that no such fraudulent communications exist.

62)   The Defendants knew the allegations in the Lawsuit were false at the time it was filed.

63)   The Lawsuit also gratuitous and defamatory claims against Kovalan and his wife, that had no relationship to the claims of securities fraud in the Lawsuit, but were only included for an improper purpose to damage their reputations and cause emotional distress, including, but not limited to:

a.   Kovelan embezzled the Investor Defendants funds.

b.   Kovalan raised funds by way of a Ponzi scheme.

c.   Kovalan and the Companies engaged in tax fraud.

d.   Kovalan and the Companies failed to secure the Companies intellectual properties.

64)   The allegations in the Lawsuit were false and were known to be false by the Defendants at the time the Lawsuit was filed.

65)   Marschall, Gallo, and Sinagra, as financial experts employed by Northwestern Mut. Ins. Co., were aware that the Lawsuit would effectively halt any future investments in the

Companies, and knowingly and intentionally authorize the filing of the Lawsuits as part of their and Puli's attempt to take over the Companies.

66)    Shortly after the Lawsuit was filed, it terminated in the Plaintiffs' favor when it was dismissed on August 23, 2022.

67)    The Lawsuit was filed without probable cause.

68)    Lawsuit was filed and pursued for improper purposes, including but not limited to:

    a)    attempting to wrest control of the Companies by scaring away future investors;

    b)    vengeance against the Companies, Kovalan and his wife, due to the refusal immediately provide Puli with ownership to 40% of the Companies and/or to reinstate Puli to his former employment positions.

    c)    forced the war of attrition by forcing the Plaintiffs to use scarce resources on attorney's fees, damage the business reputation of the Plaintiffs and their products, and cause emotional fatigue in order to force a compromise settlement with Puli and the Investment Defendants.

69)    The filing and prosecution of the Lawsuit by the Defendants was the result of oppression, fraud and malice.

**Count I (Common Law Vexatious Litigation/ Malicious Prosecution)**

    Paragraphs 1 through 69 are realleged as Paragraphs 1 through 69 of this Count.

70)    The Defendants commenced and prosecuted the Lawsuit against the Plaintiffs.

71)    The Lawsuit was filed without probable cause.

72)    The Lawsuit was filed with malice.

73)    The Lawsuit terminated in the Plaintiffs' favor.

74)     The Lawsuit was the proximate cause of the Plaintiffs' damages losses and harm, including, but not limited to, emotional distress on the part of the Kovalan and Lihn.

**Count II (Statutory Vexatious Litigation/Malicious Prosecution)**

Paragraphs 1 through 74 are realleged herein as paragraphs 1 through 74 of this Count.

75)      The Defendants commenced and prosecuted the Lawsuit without probable cause and/or malicious intent in violation of Connecticut General Statute § 52-568.

**Count III (Abuse of Process)**

Paragraphs 1 through 69 are realleged as Paragraphs 1 through 69 of this Count.

70)     The Defendants used legal process when they filed and pursued the Lawsuit after it was filed.

71)     As set forth above, the Defendant's use of the legal process was for a purpose for which it was not designed.

72)      As a result of the Defendants' above-mentioned conduct in the filing and prosecution of the Lawsuit, the Plaintiffs suffered damages, losses, and harm.

**Count IV (Tortious Interference)**

Paragraphs 1 through 69 are realleged as Paragraphs 1 through 69 of this Count.

70)      Puli wrongfully breached his contractual and fiduciary duties and provided the Lorium Defendants with proprietary and confidential information belonging to the Companies.

71)     Puli, Gordon and the Lorium Defendants, knowing that Puli provided them with confidential and proprietary information belonging to the Companies.  Publicized confidential

and proprietary information to third-parties for no legitimate legal or business purpose, but rather order to tortiously interfere with the Companies' business expectancies.

72)     As a direct and proximate cause of Gordon and the Lorium Defendant's tortious publication of the confidential proprietary information to third parties the Plaintiffs have damages, harm, and losses.

**Count V (Violation of the Defend Secrets Act)**

Paragraphs 1 through 69 are realleged as Paragraphs 1 through 69 of this Count.

70)     As set forth above, the Companies owns and possess trade secrets, which include, but not limited to, nonpublic, confidential, and proprietary financial information, business information, scientific information, and/or technical information, concerning the Companies' plans to raise capital, its business model, business plans, finances, customers, venders, and/or confidential contracts.

71)     This information constitutes confidential, proprietary and trade secret information, the secrecy of which the Companies have taken substantial steps to maintain as defined and in accordance with 18 U.S.C § 1839(3).

72)     As set forth above, Puli, after accepting the obligations and benefits in his employment agreement, was provided access to the Companies' trade secrets, confidential, and proprietary information.

73)     The Defendants, with Puli's assistance, have obtained the trade secrets and have attempted to use the trade secrets in pursuit of their efforts to take control of the Companies and have benefited from the misappropriation of the Companies trade secrets.

74)     The Companies are entitled to recover damages for any actual loss caused by the misappropriation of its trade secrets by Puli and the Defendants.

75)    The Companies are entitled to recover damages for any unjust enrichment caused by the misappropriation of its trade secrets that is not otherwise addressed in computing damages for its actual loss.

76)    As set forth above, Puli and the Defendants' conduct in misappropriating the trade secrets was willful and malicious, and pursuant to 18 U.S.C. 1836(b)(3)(C), the Companies are entitled to exemplary damages in an amount of not more than double the number of compensatory damages awarded herein.

77)    As a direct and proximate cause of the conduct of Puli and the Investment Defendants, the Companies have suffered and will continue to suffer irreparable financial loss, loss of goodwill and loss of confidentiality in its proprietary and confidential information, including its trade secrets.

78)    As such, pursuant to 18 U.S.C. § 1836(b)(3)(A), the Companies are entitled to an injunction enjoining the Defendants from engaging in any further actual or threatened misappropriation of the Companies trade secrets, and from them making any future disclosures.

**Count VI (Violation of the Connecticut Trade Secret Act)**

Paragraphs 1 through 69 are realleged as Paragraphs 1 through  69 of this Count.

70)    The Companies trade secrets, confidential, and proprietary information constitute "trade secrets," as that term is defined under the Connecticut Uniform Trade Secret Act, General Statute § 35-50, et seq.

71)    At all relevant times, the Companies have used and continue to use reasonable efforts to protect the secrecy of the Companies' trade secrets.

72)    The Companies' trade secrets provide critical commercial and competitive advantages to the Companies, and the Companies derive significant economic value from this

information not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

73)        As set forth above, Puli and the Defendants' conduct constitutes misappropriation of the Companies' trade secrets in violation of the Connecticut Uniform Trade Secret Act.

74)        As set forth above, Puli and the Defendants' conduct in misappropriating the Companies' trade secrets was intentional, knowing, willful, malicious, fraudulent and oppressive.

75)        As a direct and proximate cause of the defendants' misappropriation of the Companies' trade secrets, the Companies have suffered and will continue to suffer substantial damages and, pursuant to Conn. Gen. Stat. § 35-53(a), the Companies are entitled to an award of compensatory damages, in an amount to be determined at trial, for loss of the Companies' trade secrets and other confidential information.

76)        As a result of Puli and the Defendants willful and malicious misappropriation of the Companies' trade secrets, the Companies are entitled to punitive damages, pursuant to Conn. Gen. Stat. § 35-53(b), by the doubling of damages awarded to the Companies pursuant to § 35-53(a).

77)        Further, Companies is entitled, under Section 35-53(b), to an award of its attorneys' fees and costs.

78)         As a direct and proximate cause of Puli and the Defendants' conduct, the Companies have suffered, and will continue to suffer, irreparable financial loss, loss of goodwill and loss of confidentiality of its proprietary and confidential information, including the Companies' trade secrets.

79)          As such, pursuant to Conn. Gen. Stat. § 35-52, the Companies are entitled to a permanent injunction enjoining Puli and the Defendants from engaging in any further actual or threatened misappropriation of the Companies' trade secrets and from disclosing them to anyone other than an employee or representative of the Companies.

**Plaintiffs seek a jury trial.**

Wherefore the Plaintiffs seek:

      a.   money damages;
      b.   prejudgment and post-judgment interest;
      c.   reasonable attorneys fees and costs;
      d.   punitive damages;
      e.   temporary and permanent injunctive relief and/or
      f.   such other relief as the court deems just and equitable.

By:  The Plaintiffs

  */s/ Joe Sargent*
Joseph P. Sargent (17779)
1595 Black Rock Turnpike
Fairfield CT 06824
T(203) 273-6730
F(203) 659-7360
jps@sargentlaw.net